GALLUP v. STERLING et al.

(Supreme Court, Trial Term, New York County. March 7, 18C8.)

1. PLEADING—MOTION TO DISMISS COMPLAINT.
   On a motion to dismiss the complaint because it does not state facts sufficient to constitute a cause of action, its allegations must be taken as true.

2. CONTRACTS—RULE OF CONSTRUCTION.
   In construing a contract, effect must be given to the intention of the parties, so far as lawful, to be gathered from the whole instrument and the nature and circumstances of the case.

3. SALES—BREACH—PENALTY—OPTIONS.
   A contract of sale of capital stock expressly stipulated that, should the purchaser fail to make payments of the price as agreed, he should forfeit the stock, which should revert to the seller, and all claims against the purchaser should thereupon cease. Held not a penalty, but an option in the purchaser, to either pay the price and take the stock, or refuse to pay and forfeit the stock, and a refusal to pay was not a breach.

4. SAME—DELIVERY—PASSAGE OF TITLE.
   Where a contract of sale of capital stock recited that third persons held the stock as collateral security for a corporation debt, so that the seller could not then deliver it, title to the stock did not pass to the purchaser by the contract.

5. SAME—CONSTRUCTION OF CONTRACT.
   The word "sold" in a contract of sale of chattels does not necessarily imply a change of title.

6. SAME—ACTION FOR BREACH—PLEADING.
   Where a contract of sale of capital stock recited that third persons held the stock as collateral security, so that it could not then be delivered, a complaint for damages for a breach by the purchaser, which fails to allege a

delivery of, or ability and readiness of the seller to deliver, the stock, is insufficient.

Action by Albert S. Gallup against Susie Price Sterling and others, as executors of the last will and testament of Theodore W. Sterling, deceased. Judgment was rendered dismissing the complaint, and plaintiff moved for a new trial. Denied.

Lotham E. Reed and Thaddeus D. Kenneson, for plaintiff.
Joseph H. Choate, for defendants.

DAVY, J. This action was commenced in 1890 against Theodore W. Sterling, and has since been revived against the present defendants as his executors. The case came on for trial in December, 1897, and, after counsel for the plaintiff had opened his case, the learned counsel for the defendants moved that the complaint be dismissed, on the ground that it did not state facts sufficient to constitute a cause of action. The court granted the motion, and took under consideration the plaintiff's motion for a new trial on all the grounds stated in section 999 of the Code of Civil Procedure. The rule is well settled that, on a motion to dismiss the complaint on the ground that it does not state facts sufficient to constitute a cause of action, its allegations must be taken as true, and the sole question presented for the consideration of the court is whether it sufficiently states a cause of action. Tooker v. Arnoux, 76 N. Y. 397; Sheridan v. Jackson, 72 N. Y. 170. The action is upon a contract which was made between the plaintiff and Theodore W. Sterling. It states that the plaintiff is the owner of 850 shares of the capital stock of the Narrow Fabric Loom Company, of the city of New York, which the plaintiff has sold to Sterling for $15 per share, payable as follows: $1,000 on the signing of the contract, and the further sum of $4,000 on or before three months from the date of the agreement; and it was further agreed that, whenever the full sum of $5,000 and interest thereon should have been paid by Sterling, the plaintiff was to assign and deliver to him 250 shares of said stock; and, in case Sterling failed to pay the $4,000 and interest within the time specified, then the $1,000 paid and the said 250 shares of stock were to be forfeited. The agreement further recites that Lester & Kane hold 600 of the said 850 shares of said capital stock as part security for the payment of the sum of $50,000 due to the company, which the plaintiff could not then deliver to Sterling. It is further stipulated in the contract that the remaining $7,750 shall be paid in three installments, at one, three, and six months, with interest from the date that the sum of $50,000 due Lester & Kane shall have been paid. The agreement also provides that, "should Sterling fail to pay the sums due from him as set forth in the contract, he shall forfeit said stock, and the same shall revert to the plaintiff, and all claims against the said Sterling shall cease."

In construing this agreement, we must give effect to the intent of the parties, so far as such intent can be collected from the whole instrument and is consistent with the rules of law. There is no mistaking the true meaning of the contract, which is set forth in full in the complaint. The parties declare, in language not capable of being

misunderstood or misinterpreted, that they have agreed that, if Sterling shall fail to pay the $7,750, title to the stock shall revert to the plaintiff, and all claims against Sterling shall cease. "One of the familiar rules of construction is that courts are to be guided by the intention of the parties, to be gathered from the language of the contract itself and from the nature and circumstances of the case." Colwell v. Lawrence, 38 N. Y. 74; Cotheal v. Talmage, 9 N. Y. 554. The contract, fairly construed, gives Sterling the option to determine whether he would take the stock and pay the balance due upon the contract, or allow it to be forfeited and revert to the plaintiff. There could be no breach of contract if Sterling did all that the contract required him to do, and, if there was no breach, no action could be maintained for the contract price of the stock.

The plaintiff contends that the forfeiture and reverter of the stock provided for in the contract is in the nature of a penalty, and that the plaintiff has his election to resort to the penalty, or he can resort to any other remedy. The above rule does not apply to this contract, because the agreement on the part of the plaintiff to accept the stock and release Sterling is absolute, and an action against the defendants in any form cannot be maintained. Sterling, by paying the $1,000 at the time the contract was executed, obtained the right to purchase 850 shares of the capital stock of the Narrow Fabric Loom Company upon the payment of the sums agreed upon in the contract. Whether he availed himself of this privilege or not was optional with him. He expressly stipulated, in case he did not take the stock, it should be forfeited, and the title to the same should revert to the plaintiff, and the plaintiff expressly agreed to accept the stock, and to release Sterling from all claims upon the contract. The parties to this agreement had the right to insert such conditions therein as they might mutually agree upon, or which they might consider necessary to protect their interests in the sale and purchase of the stock, and, when made, must be construed and enforced like all other contracts, according to the expressed understanding and intent of the parties making it.

It was held in Manvel v. Holdredge, 45 N. Y. 151, under a contract where the defendant, in consideration of the assignment to him by the plaintiff of an interest in a patent, bound himself to pay the plaintiff $1,000 before the end of the next year, or reassign the patent, that the year having elapsed without payment, and the defendant having, at the time the money was demanded, offered to reassign the patent, no action would lie against him to recover the $1,000, as there had been no breach of the contract. Allen, J., in speaking for the court, says: "By its terms, he had the option, during the whole year, to pay the price, and, upon his failure to do so within that time, the plaintiff's only remedy was to compel the reassignment, or, in case of a refusal, to recover whatever might be its value."

Taking into view all the provisions of the contract, it is clear that Sterling had the option to pay the remaining $7,750, with the accumulated interest thereon, and take the balance of the stock, or to allow it to be forfeited and revert to the plaintiff; and it is also clear that the plaintiff agreed to accept the stock in case it was for-

feited, and to release Sterling from all the obligations of the contract. This action, therefore, cannot be maintained, for the reason, which I have already indicated, that there has been no breach of the contract. Assuming, however, that there was a breach, the plaintiff, even then, could not maintain this action. The rule is that, where the right of action depends upon a condition precedent, its performance must be averred in the complaint. There could be no breach of the agreement to pay the money until the stock had been tendered. While the stock remained pledged to Lester & Kane, no title passed to Sterling, and no legal tender could be made to him. He may have had an equitable interest in the stock which could only be made perfect by the payment of Lester & Kane's demand, which he was not required to do by the terms of the contract. Sterling had no such interest or title to the stock as could be reached by his creditors by levy and sale under execution. The stock had been assigned and pledged to Lester & Kane as security for the payment of the $50,000, and they could retain and sell it, if their lien was not satisfied. The rule is well settled that a contract of sale and purchase does not pass the title when anything remains to be done by the seller to ascertain the identity, quality, quantity, or price of the property. Burrows v. Whitaker, 71 N. Y. 296. The word "sold," in a contract of sale of chattels, does not necessarily imply a change of title in the goods. Whether the contract changed the title to the stock, or only agreed to sell and deliver it thereafter, depends upon the whole of the language used in the contract. Anderson v. Read, 106 N. Y. 351, 13 N. E. 292. No time was fixed for the payment of the $50,000 to Lester & Kane, at least so far as appears from the contract. It was problematical whether it ever would be paid or not. How was Sterling to know whether the stock had been reassigned, unless he was notified by the plaintiff that it was in his possession, ready to be delivered upon the payment of the contract price? He was not bound to pay the price agreed upon for the stock without receiving it; and how can it be said that he refused to receive the stock, and pay the money for it, when it never was tendered to him? The contract for the sale of the stock was executory, and, until the stock was released from the lien of Lester & Kane, the title to it could not be transferred to Sterling. The acts of the parties in the delivery of the stock and payment of the money were to be simultaneous. Neither could put the other in default, except by performance or tender of performance on his part; and a recovery cannot be had for nonperformance of the contract, unless an actual performance or tender of performance is averred and proved by the party alleging a breach of the contract by the other. Lester v. Jewett, 11 N. Y. 453; Wheeler v. Garcia, 40 N. Y. 589; Currie v. White, 45 N. Y. 835; Sawyer v. Dean, 114 N. Y. 477, 21 N. E. 1012. The plaintiff nowhere alleges in his complaint that he offered to transfer and deliver the stock upon the payment of the contract price. Ability and readiness to deliver was a fact material to be averred by the plaintiff in his complaint. Kein v. Tupper, 52 N. Y. 553. It was held in Lester v. Jewett, 11 N. Y. 453: "When a party agrees in writing, for value received, to purchase stock at a future day, at a price named, to entitle the vendor to recover upon such an

agreement, he must aver and prove tender and offer to transfer the stock to the purchaser." In Haydon v. Demets, 53 N. Y. 428, Chief Judge Church, in speaking for the court, says: "The contract for the sale of the copper was executory. Although the plaintiff owned the specific copper sold, he also had other copper of the same quality, and, until it was designated and set apart, the title remained in him. Payment and delivery were to be simultaneous acts, and neither party could maintain an action against the other without performance or tender of performance on his part." He also says: "The setting apart and tender gave them a right of property in the copper, but not the right of possession without payment." There is a broad distinction between this case and the cases cited by the learned counsel for the plaintiff, in which the terms of the forfeiture were entirely different.

The motion for a new trial, therefore, must be denied, with $10 costs to the defendants.